Filed 7/22/26  P. v. Herrera CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL HERRERA,<br><br>    Defendant and Appellant. | 2d Crim. No. B343752<br>(Super. Ct. No. BA414327)<br>(Los Angeles County) |

Michael Herrera pleaded guilty to attempted murder in 2015.  He petitioned for resentencing under Penal Code[1] section 1172.6 around the time of his release on parole.  The trial court denied the petition after an evidentiary hearing.  On appeal, appellant contends the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of attempted murder under current law.  We will affirm.

---

[1] Undesignated statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND
*Preliminary Hearing*

Four witnesses testified at the preliminary hearing: the two victims (A.B. and G.R.), an LAPD gang officer, and an LAPD criminologist. A.B. drove his girlfriend G.R. to a McDonald's restaurant in the early morning hours of August 1, 2013. They returned to G.R.'s house afterward. A.B. pulled his car partly into the driveway so G.R. could get out. A white taxi with three men inside drove behind and past their car a few feet and stopped in the street. A man later identified as Johnathan Pereida opened the taxi's front passenger door and approached A.B.'s open car window. As he approached, Pereida raised his right arm with a pistol in his hand and said, "Where are you from, puto?" He appeared to pull the trigger repeatedly, but the pistol did not fire. Pereida exclaimed "oh, fuck!" and slowly walked back to the taxi. It drove away.

Officers spotted the taxi about an hour later. It crashed into a fence after a short pursuit. Appellant and Pereida fled on foot but were soon caught with the help of K-9s. Police brought A.B. and G.R. to the scene for a show-up. They identified Pereida as the gunman and appellant as the taxi's back seat passenger. A third suspect (the driver) was never identified.

A.B. testified he saw appellant looking out the taxi's rear passenger window while Pereida got out, confronted them with the pistol and walked back to the taxi. G.R. saw appellant watching from the back passenger seat, open his door and stick "almost half of his body" out of the taxi. She noticed a "smirk on his face" while he watched Pereida and the victims.

The gang officer described himself as an expert on the "Toonerville" gang in Los Angeles. G.R. lived in the territory of

2

the rival "Avenues" gang. The officer drove to a neighborhood controlled by Toonerville so he could monitor the area for the suspects. He spotted a white taxi driving towards him and illuminated it with a spotlight. He recognized the occupants as Pereida and appellant. Both were documented Toonerville gang members. The officer saw them run in opposite directions after the crash. He found a pistol containing seven live rounds on the floor of the abandoned taxi. A.B. later recognized the pistol as the one Pereida pointed at him. The LAPD criminologist testified that it malfunctioned when he tried to fire it.

The gang officer also testified about the rivalry between the Toonerville and Avenues gangs. He described how committing crimes or spray-painting graffiti in an Avenues stronghold would earn a Toonerville gang member the respect of his colleagues. Driving a taxi into the territory would enable them to maintain a low profile. It also showed that the crime that followed "was planned out and thought out. It was thoroughly thought out." A phrase like "Where are you from, puto?" would be seen as a direct challenge to a rival gang member. He then discussed the role of a passenger watching the confrontation. "By being inside of the taxicab with the door open," he testified, "you're acting as a lookout. You're there backing up your buddy to make sure nothing goes wrong, whether it be a rival gang rolling up on them or law enforcement. You are there to have his back and make sure he's going to be okay." "You're not going to go into a rival gang neighborhood and do graffiti and do any kind of crime without having backup with you and having even a firearm with you, just in case stuff goes wrong and you have to fight your way out of that neighborhood."

He also explained why gang members generally do not commit murders by themselves. "In case something goes wrong, in case they go commit the murder and as a gun – a gunshot's pretty loud, so that gunshot is going to be heard and it's going to bring people out. So if they're not quick enough to get away before that gunshot is heard, they're going to need help to get out." A fellow gang member could also serve as an eyewitness who could confirm "that the crime did occur."

*Appellant Pleads Guilty to Attempted Murder*

Appellant and Pereida were charged with two counts of attempted willful and deliberate murder. Appellant negotiated a guilty plea to one count of attempted murder without premeditation and deliberation. He did not stipulate to a factual basis for the plea. He did not admit a specific theory of guilt nor did he plead to any type of malice. The court imposed a low term sentence of five years plus a ten-year armed principal enhancement. Pereida went to trial. He received two 25-to-life prison terms after a jury convicted him on both attempted murder counts.[2]

*Petition for Resentencing*

Appellant petitioned for resentencing in 2023. The People conceded the petition made a prima facie showing under section 1172.6, subdivision (c).[3] (*People v. Estrada* (2024) 101

---

[2] This division affirmed Pereida's conviction in *People v. Pereida* (B271443, June 21, 2017) [nonpub. opn]. His conviction is not revisited here.

[3] A person convicted of attempted murder under the natural and probable consequences doctrine is entitled to have his conviction vacated. (§ 1172.6, subd. (a).) Upon a prima facie showing of resentencing eligibility the prosecution has the

4

Cal.App.5th 328, 338 [a generic plea to attempted murder that did not admit any malice or specific theory of guilt, did not make the defendant "ineligible for relief at the prima facie stage as a matter of law"].) The trial court held an evidentiary hearing in 2025. The parties argued but did not introduce new evidence, choosing instead to submit on the preliminary hearing transcript and exhibits.

The trial court denied the petition. It stated: "So as an independent fact finder, and based upon the testimony that was presented at the preliminary hearing, I do find that the People have met their burden of proof by establishing beyond a reasonable doubt that Mr. Herrera is a direct aider and abettor and harbored express malice. This is somewhat of a summary, but I do find that [appellant and Pereida] were active Toonerville gang members who went into The Avenues territory, or rival gang territory, that borders theirs with the express purpose of having an armed confrontation and shooting an individual. They confronted the victims, who were not gang members. And [Pereida] had the gun; it is uncontested. He challenged the victims in a very specific gang manner. And he pulled the trigger on the gun, which was pointed directly at the victims, while he was in close range. It is also uncontested that Mr. Herrera was in the car, and that he, in fact, was looking out, whether or not he had his body partially out the car or not during the encounter."

The trial court agreed with the gang officer that a taxi would allow gang members to "be less conspicuous" when

---

burden to "prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (d)(3).)

5

venturing into a rival gang's territory. "As far as [appellant] being the lookout," it stated, "the court does not find that to be the ultimate fact. The ultimate fact would be whether or not Mr. Herrera shared the intent to kill or had express malice." The court gave "a lot of weight" to his conduct after the confrontation. It concluded: "[Appellant's] continued association with [Pereida] immediately after the shooting, in the same vehicle, driving around their own hood at that particular point, and then the flight from the police, both the high-speed car chase and then the flight on foot, and the hiding in someone's yard or private property afterwards just goes to further show that he had the express malice and was in with all of the actions taken that might [*sic*] by [Pereida]. They were all out capering, looking to do these actions together. It was not thwarted because of anything anyone did, anyone who tried to stop it, it was simply the malfunction of the gun."

The court's minute order summarized the ruling as follows: "The Court finds, beyond a reasonable doubt, that the witnesses at the preliminary hearing are credible, that there is no evidence of a natural and probable consequences theory of liability, and that Defendant is liable for attempted murder as a direct aider and abettor."

DISCUSSION

Appellant contends the trial court erred when it denied his petition for resentencing because there was insufficient evidence that he aided and abetted the attempted murder of A.B. and G.R. To determine "whether a trial court correctly denied a section 1172.6 petition following an evidentiary hearing, ""we review the factual findings for substantial evidence and the application of those facts to the statute de novo.""" (*People v. Arnold* (2023) 93

6

Cal.App.5th 376, 383.)  We review the record in the light most favorable to the trial court's decision, "to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt."  (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)

Attempted murder requires proving "'specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.'"  (*People v. Falaniko* (2016) 1 Cal.App.5th 1234, 1242-1243; § 21a.)  A defendant aids and abets a crime by "acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime."  (*People v. Beeman* (1984) 35 Cal.3d 547, 561.)

We conclude sufficient evidence supports the trial court's findings.  Appellant arrived at the scene in the same white taxi as Pereida.  They stopped within two or three feet of the victims' car.  Appellant opened his door, stuck his body out, and watched Pereida as he walked with a pistol toward the victims' vehicle, pointed the pistol at A.B. and G.R., yelled a gang challenge, and attempted to fire.  G.R. described appellant "smirking" as he watched.  He watched as Pereida then slowly walked back to the taxi.  The three suspects then fled together when Pereida's pistol failed to fire.  When police spotted the taxi later that morning, only appellant and Pereida were in the car.  The two men led police on a chase.  Appellant emerged from the driver's seat after crashing the taxi and fled on foot.  The pistol used in the attempted shooting was found on the floor of the crashed taxi.  The officer identified appellant and Pereida as active members of

7

the Toonerville criminal street gang based on "multiple contacts" with them in the past. He testified the attempted shooting took place in the territory of the Toonerville's rival gang.

Appellant contends these facts are insufficient to prove the required mental state or actus reas to convict him of attempted murder on an aiding or abetting theory. He argues the evidence portrays him as a passive observer of Pereida's attempted killing rather than as a co-participant. We disagree.

"Aiding and abetting may be shown by circumstantial evidence. It is well settled that the presence at the scene of the crime and failure to prevent it, companionship and conduct before and after the offense, including flight, are relevant to determining whether a defendant aided and abetted in the commission of the crime." (*People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599.) While mere presence at the scene of a crime is alone insufficient to constitute aiding and abetting, facts showing a defendant served as a lookout can evidence culpability. (*In re White* (2018) 21 Cal.App.5th 18, 26, aff'd by *In re White* (2020) 9 Cal.5th 455.) Similarly, gang evidence alone cannot prove a defendant is an aider and abettor to a crime. (*People v. Guillen* (2014) 227 Cal.App.4th 934, 992.) It may, however, show motive for the crime, which is often probative of intent to kill. (*People v. Smith* (2005) 37 Cal.4th 733, 740-741; *People v. Iraheta* (2017) 14 Cal.App.5th 1228, 1252-1253; *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167-1168.) "That the evidence might also reasonably be reconciled with a contrary finding" does not show the evidence was insufficient. (*People v. Ewing* (2016) 244 Cal.App.4th 359, 380.)

The trial court could reasonably conclude based upon the evidence at trial that appellant aided and abetted Pereida's

attempted murder.  Appellant's proximity to the victims, his opening of the taxi door, his watching Pereida approach the victims with a pistol, and even his facial expression showed he shared Pereida's intent to kill the victims and would assist his Toonerville colleague if they resisted.

DISPOSITION

The order denying the section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

BALTODANO, Acting P. J.

McKAIG, J.*

---

\* Judge of the Superior Court for Ventura, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9

Charlaine Olmedo, Judge
Superior Court County of Los Angeles
_____

Bess Stiffelman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Thomas C. Hsieh, and David Glasman, Deputy Attorneys General, for Plaintiff and Respondent.